In the Circuit Court
15th Circuit
Palm Beach County

502024CA005288XXXAMB
AA

Yaakov Vann
V
VOLGUARDSON, R. R. (2213. B6) (563)
WOLLSCHLAGER, A.J. (730)
COHEN, J.P. (662)
RODRIGUEZ, M.A. (535)
FINNE, M.J. (756)
VAZQUEZ-BELLO, Y.D.(663)
HETTCHEN, J.F. (836)
CASTILLO, J. (804)
VAN CAMP, J.A. (747)
Captain Sean McGovern
Chris Bromel

COMPLAINT

1. On or about February 25, 2020, petitioner was lawfully riding a Palm Tran bus on Palmetto Park Road.
2. A passenger on the bus threatened petitioner.
3. Said passenger was apparently identified by Boca Police as Edward Flanagan ("EF")
4. Said passenger threatened to "bash [Petitoner's] head in."
5. Petitioner called 911 to report said threat.
6. Petitioner was sitting on the back seat of the bus; and had no ability to get off the bus, without passing EF.
7. When Police Defendants responded to the scene; Petitioner was sitting by himself on the bus.  No other person was on the bus.
8. All Responding Boca Raton Police Officers, collectively "Police Defendants" knew or should have known Petitioner had no duty to retreat before using force or threatening to use force.
9. Petitioner has and had a Constitutional and or Statutory right to carry a concealed weapon on the date in question.
10. All police defendants knew or should have known about Florida Statute 776.012 and or other relevant statutes and or case law on Stand Your Ground Laws in Florida, "SYG.

1st Claim against Police Defendants

11. Cohen and VanCamp deployed rifles against Petitioner.
12. Cohen and VanCamp aimed AR15 and or other long guns at Petitioner.
13. Cohen and VanCamp aimed rifles at Petitioner's head.
14. PETITIONER WAS NOT FREE TO LEAVE
15. Police Defendants intended to SEIZE Petitioner.
16. Police Defendants did in fact seize Petitioner.
17. Petitioner was seized against his will.

18. Cohen and VanCamp knew that enough Police Defendants were "on scene" to not require the use or display of deadly force.
19. Cohen and VanCamp knew that there was no probable cause to believe Petitioner committed any crime.
20. Cohen and VanCamp knew that there was no reasonable suspicion that Petitioner committed a crime.
21. Cohen and VanCamp knew that there was no reasonable suspicion that Petitioner was about to commit a crime.
22. In fact, only information that Cohen and VanCamp had, as reason for deploying and aiming rifles at Petitioner's head, is that Petitioner called 911 to report threats made to him; and that Petitioner may have threatened to LEGALLY use force to prevent imminent death or great bodily harm to himself.
23. All police defendants knew Cohen and VanCamp were using excessive force and failed to stop them.
24. Police Defendants acknowledged that Petitioner complied with all instructions.
25. 10 officers, at least 2 AR15s, other guns drawn and Petitioner in handcuffs is excessive force.
26. 10 officers, at least 2 AR15s, other guns drawn and Petitioner in handcuffs is excessive and is a de facto arrest.

2nd Claim Against all Police Defendants

27. One or more police defendants handcuffed Petitioner.
28. Within approximately 60 seconds or less of being handcuffed; Petitioner's LAWFUL AND OR LEGAL weapon was removed from him.
29. Within or approximately within same 60 second or less time frame; Police Defendants had Petitioner's original CCW Permit issued by the State of Florida.
30. After lawful weapon was in custody of Police Defendants, Police Defendants had no valid "officer safety" reasons to keep Petitioner handcuffed.
31. After lawful weapon was in custody of Police Defendants, Police Defendants had no valid "officer safety" reasons to keep Petitioner face down on the ground.
32. After lawful weapon was in custody of Police Defendants, Police Defendants had no valid "officer safety" reasons to keep Petitioner handcuffed, face down to the ground in a degrading position.
33. After lawful weapon was in custody of Police Defendants, Police Defendants had no valid "officer safety" reasons to keep Petitioner handcuffed, face down to the ground in a degrading position, in view of anyone and everyone in the public to see
34. Police Defendants unlawfully restrained Petitioner against his will.
35. Police Defendants unlawfully prevented Petitioner from leaving police custody.
36. Police Defendants told Petitioner of "evidence" that Petitioner said to another passenger that he "had a gun" or "possessed a gun" or something to that effect.
37. Petitioner was unlawfully deprived of his property while being unlawfully detained.
38. Petitioner was unlawfully deprived of his liberty while being unlawfully detained.
39. All Police Defendants either participated in said unlawful detention and or failed to prevent it.

3rd claim against all Police Defendants

40. IF Police Defendants had legal justification to "investigate" if a crime had been committed; they still did not release Petitioner from custody after it was certain that Petitioner hadn't committed a crime.
41. Per the police report "PR" case # 2020-002736; police defendant; presumably VOLGUARDSON, spoke to the driver of the bus, Rodriguez, who stated "stated he did not hear any specific threats by either party nor did he observe any of the subjects display a weapon or firearm or attempt to harm one another."[1]
42. "Witness" Tejeda "never saw a firearm nor did Van present or display the firearm in anyway."
43. Finally, ED advised "that he did not at any point feel threatened nor did Vann ever display a firearm."
44. At this point there was absolutely NO REASONABLE SUSPICION THAT PETITIONER COMMITTED ANY CRIME.
45. Yet Police Defendants still did not release Petitioner.
46. In fact the police report doesn't say amount of time Petitioner was in handcuffs, as police defendants knew the time well exceeded the permissible/legal time to not be an arrest.
47. In fact the CAD and or Radio Logo doesn't say amount of time Petitioner was in handcuffs, as police defendants knew the time well exceeded the permissible/legal time to not be an arrest.
48. Not only did Police Defendants not release Petitioner, but Police Defendant(s) unlawfully questioned Petitioner, while unlawfully being held in custody, and not free to leave; questioning took place WITHOUT being issued Miranda warnings.
49. All police Defendants knew that Miranda warnings were required before questioning someone in custody.

4th Claim against all Police Defendants

50. Police Defendant intentionally removed Petitioner's iPhone from Petitioner while unlawfully detained in cuffs.
51. Police Defendant intentionally kicked and or moved with his foot, Petitioner's iPhone from Petitioner while unlawfully detained in cuffs.
52. Police Defendant(s) intentionally removed Petitioner's iPhone from Petitioner while unlawfully detained in cuffs; while Petitioner was calling and or attempting to call a lawyer about the unlawful detention/arrest being committed by Police Defendants.
53. Police Defendant(s) knew Petitioner was in fact calling a lawyer when he unlawfully and without legal justification took Petitioner's Iphone from him.
54. Police Defendants knew they didn't have a warrant to seize Petitioner's phone
55. Police Defendants knew they lacked a legal basis to seize Petitioner's iPhone.
56. All Police Defendants either seized Petitioner's iPhone and or prevented the other Police Defendants from seizing Petitioner's iPhone.

5th Claim against all Police Defendants

57. Petitioner never consented to being touched by any Police Defendant.

---

[1] Quotes are reflective of what is stated in police report, not what the individuals may have stated to police defendant

58. Petitioner never consented to having to lay face down on the ground.
59. Petitioner never consented to being in handcuffs.
60. Petitioner didn't consent to being touched by any Police Defendant.
61. Being in handcuffs laying face down on the ground is both harmful and offensive.

6th Claim Against all Police Defendants

62. All Police Defendants could have prevented their fellow police officers from committing the constitutional violations against Petitioner.
63. All Police Defendants chose not to prevent their fellow police officers from committing the constitutional violations against Petitioner.
64. All Police Defendants could have notified the Police Chief or other superior of their fellow police officers from committing the constitutional violations against Petitioner.
65. All Police Defendants failed to notify the Police Chief of the Constitutional violations taking place against Petitioner.

7th Claim Against Chris Bromel

66. Public Bus Transportation is a government function
67. Palm Tran supplies public transportation in Palm Beach County
68. Palm Tran is either government, quasi government and or private company doing government service on behalf of government.
69. Chris Bromel is alleged to work or have worked for Palm Trans.
70. Bromel works and or has worked for Palm Beach County
71. Bromel has or has had a Palm Beach Government email address while working for Palm Tran.
72. Chris Bromel never let Petitioner know he was "on scene" prior to "trespassing" Petitioner.
73. Chris Bromel never afforded any due process prior to being trespassed from Palm Trans
74. Chris Bromel knew that Petitioner has every right that every other citizen has to ride the public buses.
75. Chris Bromel knew that Petitioner has every right that every other citizen has to ride the Palm Tran buses.
76. Chris Bromel has and or had access to the video from the surveillance of the bus in question.
77. Chris Bromel has and or had access to the audio from the surveillance of the bus in question.
78. Bromel knew Petitioner did nothing wrong while riding the bus.
79. Bromel knew petitioner violated no laws while riding the bus.
80. Bromel knew or should have known that EF in fact threatened Petitioner while Petitioner was lawfully riding the bus.
81. Bromel knew he was violating Petitioner's rights when he issued said trespass, preventing Petitioner from riding the Palm Tran buses.

8th claim against Bromel and Police Defendants

82. Bromel and Police Defendants agreed to prevent Petitioner from lawfully using public transportation
83. Bromel and Police Defendants conversed and agreed to keep Petitioner handcuffed for no valid legal reason.

9th claim against McGovern
84. McGovern was a Captain with BRPD
85. McGovern was on scene on day in question
86. McGovern specifically came on scene when he heard Petitioner was in custody
87. McGovern didn't prevent or stop any of the Constitutional violations being committed against Petitioner.
88. McGovern actually endorsed the constitutional violations against Petitioner
89. McGovern retaliated against Petitioner, and was all to happy to personally witness the constitutional violations being committed against petitioner.

Wherefore; Petitioner seeks damages and punitive damages as proven at trial; and all other remedies permitted by law

Petitioner Pro Se
Yaakov Vann

7186 San Salvador Drive
Boca Raton, FL 33433
2/23/24